UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HARDNEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>T. GRIFFITH, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-2462 MCE AC P<br><br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

I.     Introduction

      Plaintiff is a state prisoner at California State Prison Sacramento, under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se with a civil rights complaint filed pursuant to 42 U.S.C. § 1983, and a request for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c).

      For the following reasons, the court grants plaintiff's request to proceed in forma pauperis and provides plaintiff the choice between proceeding on his original complaint, as construed below, or filing a First Amended Complaint.

II.     In Forma Pauperis Application

      Plaintiff has submitted an affidavit and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed in forma

pauperis, ECF No. 2, will be granted.

Plaintiff must nevertheless pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

### III. Screening of Plaintiff's Complaint

#### A. Legal Standards for Screening Prisoner Civil Rights Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

B. Plaintiff's Allegations

Although plaintiff filed his complaint while incarcerated at Mule Creek State Prison (MCSP), the conduct he challenges occurred during his prior incarceration at California State Prison Sacramento (CSP-SAC). See ECF No. 1. Plaintiff makes the following allegations.[1] On the morning of November 18, 2016, plaintiff was transported from CSP-SAC to the Amador County Superior Court by MCSP Correctional Officer (CO) Gold "and others." Id. at 12. At approximately 7:00 a.m., prior to transport, plaintiff was placed in waist chains connected to a "black box" to limit his hand movements, and leg irons that limited his steps to 6 to 12 inches. Id. at 11-2. Plaintiff arrived at the Superior Court before his 8:30 a.m. scheduled appearance. Plaintiff was not called at that time and remained in the court's holding cell, fully restrained, where he became claustrophobic and anxious. By 10:30 a.m., after officers failed to respond to plaintiff's inquiries, plaintiff had a panic attack and began yelling and kicking the door, asking

---

[1] Plaintiff references numerous exhibits; however, no exhibits were attached to the complaint.

3

when he would be brought into court. CO Griffith said he'd told the bailiff that plaintiff should appear last. Plaintiff asked to wait outside. Griffith threatened to tell the judge that plaintiff refused to appear; plaintiff kicked the cell and yelled that he wanted to see the judge. Griffith signaled to the control booth to open plaintiff's cell. Plaintiff moved to the back of the cell and sat down to avoid a confrontation. Id. at 13. Plaintiff alleges that MCSP COs Griffin, Gold, Rhoades, Gruenwald, Vasquez, and Matson then engaged in the following conduct:

> When the door opened, defendants Griffith, Gold, Rhoades, Gruenwald, and Vasquez, and later Matson entered the cell without saying a word and grabbed plaintiff off the bench, thrusting his head and body against the wall several times, then pushed him out the door while they still had ahold of plaintiff using the momentum of their body weight and power to thrust plaintiff forward through the cell door into the wall in the hallway.
>
> Once in the hallway they thrust plaintiff forward by the exit door using their combined bodyweight and strength to smash plaintiff's "155 pound body frame" against the wall while they waited for the control booth to open the exit door out of the courthouse holding area and into the parking lot.
>
> Once the door was open they slipped plaintiff's feet from under him with the strength and momentum of the six officers on his back, as he fell forward face first slammed on the hard concrete floor, immediately causing plaintiff to lose consciousness for a short moment, then realizing blood [was] leaking from his face as he was lifted off the ground by his leg irons and waist chains and carried to the can in the hog tied position.
>
> Plaintiff was then transported to the emergency Sutter Amador Hospital where he was treated for his head injuries and pain to his [w]rist[s], legs, back neck pains, followed by sutures to his forehead, weeks of pain, nauseous [sic] and vomiting.

Id. at 10, 13-4.

Plaintiff alleges that "[a]t the time of the events alleged above plaintiff had pending another civil complaint against officers at CSP-Mule Creek for 'excessive force' in which in that case officers sought to justify and cover up their violent misconduct with fabricating 'resisting' allegations." ECF No. 1 at 18.

Plaintiff was charged in a Rules Violation Report (RVR) with resisting the MCSP officers at the Amador County Superior Court. Id. at 15-6. The assigned investigative employee, Officer Villa, completed his investigation on December 18, 2016 but "failed to obtain video evidence of

4

the incident of 11/18/[16]." ECF No. 1 at 16. Nor did Officer Villa review a December 22, 2016 supplemental incident report. Id. Plaintiff alleges that, at the December 24, 2016 hearing, he was denied the opportunity to impeach the reporting officers' statements, and to introduce video evidence of the incident. He alleges that another investigator (apparently subsequently retained by plaintiff), Mr. John Ambrose, a retired California Highway Patrol Officer, reviewed the Superior Court's security videos on July 28, 2017, and concluded that "the video describes a different version of the events reported by the officers, as described by Mr. Ambrose observation of the videos." Id. at 15.

The hearing officer at plaintiff's disciplinary proceeding was defendant CSP-SAC Lt. R. Cross, who at the time was named as a defendant in one of plaintiff's then pending civil rights cases. Id. at 16. Lt. Cross rejected plaintiff's efforts to obtain video evidence and impeach the reporting officers, and found plaintiff guilty of the charged offense. Thereafter plaintiff exhausted his administrative remedies challenging the disciplinary conviction. Id. at 18.

Plaintiff emphasizes in the complaint that he is a certified paralegal who, for several years, has contracted out his research and drafting services at $25 an hour, or for a flat fee. Id. at 18. Plaintiff alleges he has been unable to pursue gainful employment since his disciplinary conviction, apparently because he is so busy "defending himself on unjust allegations and pursu[ing] civil rights violations for his injuries." Id.

### C. Analysis

Plaintiff seeks declaratory and monetary relief for the alleged violations of his constitutional rights. ECF No. 1 at 29. He also generally seeks expungement from his central file of "all documents . . . that are not in compliance with due process or constitutional law." Id. at 22. The complaint does not identify the discipline resulting from plaintiff's conviction on the subject RVR; nor does the complaint expressly seek to invalidate that conviction or clearly allege that it's reversal would shorten plaintiff's term of incarceration (although he generally asserts a delay in his parole). For these reasons, the court generally finds, for screening purposes, that

////

////

1 | plaintiff's civil rights claims are not facially Heck-barred.²

          1.     Excessive Force

The complaint alleges three causes of action. Claim One states cognizable Eighth Amendment claims against MCSP COs Griffin, Gold, Rhoades, Gruenwald, Vasquez, and Matson for the use of excessive force. See ECF No. 1 at 19-20. "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not ... use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. McMillian, 503 U.S. 1 (1992)). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley v. Albers, 475 U.S. 312 (1986)). When determining whether the force was excessive, we look to the "extent of the injury. . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321). While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, at 9 (citing Whitley, at 327).

Plaintiff's allegations are also sufficient to state potentially cognizable conspiracy claims against these defendants based on their alleged agreement to use excessive force against plaintiff (and the nature of their alleged collective use of force) and then to falsely charge plaintiff with resistance. See ECF No. 1 at 19 ("Defendants had gathered together and planned their intent to

---

² Under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), a Section 1983 plaintiff cannot recover money damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff demonstrates that the conviction or sentence was reversed, expunged, or otherwise invalidated. However, "[i]f the invalidity of the disciplinary proceedings . . . would not necessarily affect the length of time to be served, then the claim falls outside the core of habeas and may be brought in § 1983." Nettles v. Grounds, 830 F.3d 922, 929 (fn. omitted) (citation omitted).

harm plaintiff just prior to entering the cell even though plaintiff didn't impose a threat to no one, and was actually seated on the bench, "shackled" in waist chains (hand restrained in black metal box) and leg irons when they entered the cell."). "To prove a conspiracy . . . under § 1983, [plaintiff] must show 'an agreement or "meeting of the minds" to violate constitutional rights.'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539,1540-41 (9th Cir. 1989) (en banc)).

However, as a matter of law, plaintiff is unable to state a cognizable claim against a correctional officer for the alleged falsification of disciplinary charges. See Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999); accord, Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."). Therefore, the complaint fails to state cognizable claims for the alleged fabrication of false charges against plaintiff or the alleged conspiracy to do to. See ECF No. 1 at 15 ("[t]he officers each provided false information and withheld information of their violent actions and charged plaintiff with resisting."); id. at 19 ("To justify their unlawful conduct they then conspired to fabricate 'resisting' allegations on a disciplinary report.").

For these reasons, plaintiff may proceed with Claim One against defendants MCSP COs T. Griffin, J. Gold, M. Rhoades, M. Gruenwald, D. Vasquez, and A. Matson, on his Eighth Amendment claims for the use of excessive force, and conspiracy to use such force.

2. Due Process

Claim Two alleges the violation of plaintiff's Fourteenth Amendment due process rights by defendants CSP-SAC Lt. R. Cross, MCSP Warden J. Lizarrago, and CDCR Secretary S. Kernan.

Plaintiff alleges that defendant Cross, who presided at the subject disciplinary hearing, improperly rejected plaintiff's requests to impeach the reporting officers' statements and to admit exculpatory video evidence, then "arbitrarily" found plaintiff guilty and imposed punishment.

ECF No. 1 at 29. Plaintiff further alleges that both Warden Lizarrago and Secretary Kernan routinely turn a "blind eye" to the "systemic custom" of permitting officers to file fabricated and/or "incomplete and inadequate incident and disciplinary report[s];" allowing officers to obtain only "selected" staff and witness statements; and failing to require that all photo and video evidence by obtained, preserved and presented. Id. at 22-3.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). An inmate subject to disciplinary sanctions that include the loss of good time credits must receive (1) advanced written notice of at least 24 hours of the charges against him; (2) an opportunity to call witnesses and present documentary evidence, to the extent consistent with institutional security; (3) assistance at the hearing if he is illiterate or if the matter is particularly complex; (4) an impartial fact finder; and (5) a written statement by the fact finder identifying the evidence relied on and the reasons for the decision. Id. at 564-66, 570-71. A finding of guilt must be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

Plaintiff's allegations fail to state a due process claim under the Wolff standards. First, prisoners have no right to cross-examine or impeach witnesses in prison disciplinary hearings. See Wolff, 418 U.S. at 567-68; Baxter v. Palmigiano, 425 U.S. 308, 322 (1976) ("Mandating confrontation and cross-examination . . . effectively preempts the area that Wolff left to the sound discretion of prison officials.") (Fn. omitted.)

Second, the allegations of the complaint do not indicate that plaintiff or hearing officer Cross were aware, at the time of the hearing, that there may have existed a relevant video recording of the challenged incident. Plaintiff does not allege that he requested, and was denied, the opportunity to present video evidence at the hearing, and his assigned investigator, Officer Villa, had not reviewed or produced such evidence. Moreover, the allegation that plaintiff's own investigator, Mr. Ambrose, subsequently viewed a video of the incident and concluded that "the video describes a different version of the events reported by the officers," ECF No. 1 at 15, does not allege that the video was in fact exculpatory for plaintiff on the disciplinary charge.

1 Third, the remaining challenge against defendant Cross is that she "arbitrarily found
2 [plaintiff] 'guilty' and imposed punishment." ECF No. 1 at 30. Substantively, Cross' finding of
3 guilt required only that it be "supported by some evidence in the record." Hill, 472 U.S. at 454.
4 Plaintiff does not challenge the decision on this e basis.

5 Finally, plaintiff makes putative due process claims against defendants MCSP Warden
6 Lizarrago and CDCR Secretary Kernan based on their alleged routine of turning a "blind eye" to
7 the systemic filing of fabricated charges against prisoners supported by inadequate investigations
8 and evidence. ECF No. 1 at 22-3. "A supervisor may be liable [under Section 1983] if there
9 exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a
10 sufficient causal connection between the supervisor's wrongful conduct and the constitutional
11 violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted). However,
12 "[t]here is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040,
13 1045 (9th Cir. 1989). A supervisor may be found liable under Section 1983 only if he personally
14 participated in the challenged conduct or knew about, but failed to prevent, the challenged
15 conduct. Id.

16 Plaintiff's general allegations against Warden Lizarrago and Secretary Kernan do not
17 demonstrate their personal involvement in pursuing the subject disciplinary charge against
18 plaintiff, or that they purposefully ignore allegedly systemic problems in the charging and
19 prosecuting of disciplinary charges generally, or condone fabricated charges against prisoners
20 with incomplete evidentiary records. Plaintiff's persistent personal complaints about the
21 disciplinary process, and the conduct of correctional staff, are insufficient to demonstrate
22 systemic problems of which Lizarrago or Kernan are aware. "A person 'subjects' another to the
23 deprivation of a constitutional right, within the meaning of §1983 [only] if he does an affirmative
24 act, participates in another's affirmative acts or omits to perform an act which he is legally
25 required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588
26 F.2d 740, 743 (9th Cir. 1978).
27 ////
28 ////

For these several reasons, the court finds that the complaint fails to state a cognizable due process claim against CSP-SAC Lt. R. Cross, MCSP Warden J. Lizarrago, or CDCR Secretary S. Kernan.

    3.  RICO and Intentional Interference with Prospective Economic Advantage

Claim Three asserts that all defendants and CDCR have violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., premised on plaintiff suffering "a material diminishment of employment prospects" as a result of defendants' alleged "pattern of racketeering activity, relating to 'obstruction of justice,' 'obstruction of criminal investigations' and 'relating to fraud and misuse of documents.'" ECF No. 1 at 24. Plaintiff alleges that he has been attacked at least five times by CDCR employees within the last ten years; that these incidents were fraudulently documented as a routine matter "for the purpose of inducing pain and suffering, but also to extend and prolong his time under their jurisdiction, 'incarcerated' by violating his civil rights," id. at 25, and "affect[ing] his 'liberty interest to parole,'" id. at 26. These repeated attacks, injuries, subsequent administrative and court challenges, and postponed parole have allegedly resulted in plaintiff's loss of active and potential clients, and hence loss of potential earnings as a paralegal. Plaintiff also contends that these circumstances state a claim for "interference with prospective business relations, which are torts under California law that constitute injury to business or property under RICO," id. at 29, citing 18 U.S.C. §§ 1962, 1964.

To state a cognizable civil RICO claim, a plaintiff must allege facts showing: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to plaintiff's business or property ("RICO injury"). Living Designs, Inc. v. E.I. Dupont de Nemours and Co., 431 F.3d 353, 361 (9th Cir. 2005). "Racketeering activity" or "predicate acts" encompass a variety of criminal acts identified in 18 U.S.C. § 1961(1). Sanford v. MemberWorks, Inc., 625 F.3d 550, 557 (9th Cir. 2010). To satisfy the "pattern" requirement, there must be at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5).

The predicate acts alleged by plaintiff – obstruction of justice, obstruction of criminal investigations, fraud and misuse of documents – are federal statutory crimes. See 18 U.S.C. §

10

1961(1). Plaintiff's contention that defendants' challenged conduct satisfies the elements of these federal crimes, while they engaged in a deliberate enterprise to impair plaintiff's paralegal business, is merely conclusory. Cf. Silva v. Di Vittorio, 658 F.3d 1090, 1105-06 (9th Cir. 2011) (affirming dismissal without leave to amend of a prisoner's "frivolous" RICO claim because even if defendant prison officers violated plaintiff's civil rights, their challenged conduct did not qualify as predicate acts of racketeering activity), overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015); accord Hernandez v. Cate, 918 F. Supp. 2d 987, 1019 (C.D. Cal. 2013). The court finds that these allegations fail to state a cognizable civil RICO claim.

These allegations also fail to support a cognizable state law claim for intentional interference with prospective economic advantage. "Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc. (2017) 2 Cal. 5th 505, 512 (citation omitted). Although the allegations of the complaint fail to plausibly support any of these elements, the court will address two elements in particular.

To demonstrate actual economic harm, "[p]laintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions." Brown v. Allstate Ins. Co., 17 F. Supp. 2d 1134, 1139 (S.D. Cal. 1998) (citation omitted). Here, plaintiff contends in pertinent part, ECF No. 1 at 25-6:

> Plaintiff's clients were mostly obtained through word of mouth where he would conduct legal "research" and "draft arguments" etc. for 25 dollars an hour or flat fee for those in society in need of paralegals.
>
> At the time of excessive force events plaintiff was working for a client in the [sic] Los Angeles and Orange County, and had to withdraw his paralegal duties because of his physical and emotional pain and suffering. . . . .

> Plaintiff had also had several prospective clients he was in the early stages of negotiating a contract/agreement concerning assisting them with paralegal duties at his fee of 25 dollars an hour, including, plaintiff was also in discussion to have his "T-N-T Paralegal Services" advertised on the web, working with others in society and had to bail out of that opportunity too. . . .

These allegations demonstrate that, with the exception of plaintiff's client in the Los Angeles and/or Orange County area, plaintiff's paralegal earnings were speculative. As for the client in Southern California, plaintiff provides no information concerning the terms of their economic relationship or plaintiff's expectations. Additionally, plaintiff's plan to advertise his legal services on the internet and/or provide his services full time upon parole reflect no more than hopes for future remunerative transactions.

Further, "the 'intent' element of an intentional interference claim 'denotes purposefully improper interference and requires a state of mind or motive more culpable than mere intent.'" Lowther v. U.S. Bank N.A., 971 F. Supp. 2d 989, 995 (D. Haw. 2013) (citation and internal quotation marks omitted), aff'd Lowther v. U.S. Bank, 702 Fed. Appx. 517 (9th Cir. 2017). Plaintiff alleges, for example, that he lost his Southern California client "because of his physical and emotional pain and suffering imposed upon him directly and/or indirectly by defendants . . . due to the interruption of the brutal attack imposed upon him and the time consuming effort defending himself and prosecuting this civil matter. . . ." ECF No. 1 at 26. However, plaintiff's allegations do not demonstrate defendants' knowledge of plaintiff's business relationships nor that defendants intentionally interfered with those relationships.

4. Potential First Amendment Claim

Plaintiff alleges that, when MCSP COs Griffin, Gold, Rhoades, Gruenwald, Vasquez, and Matson used excessive force against him, plaintiff had pending another civil complaint against MCSP officers for the alleged use of excessive force and the alleged fabrication of a "resisting" disciplinary charge. ECF No. 1 at 18. Plaintiff also alleges that, when CSP-SAC Lt. R. Cross presided as the hearing officer on the subject disciplinary charge, and found plaintiff guilty, she "was also a defendant in [a] prior civil complaint that was pending at that time filed by plaintiff." Id. at 16. These allegations imply, but do not state, retaliation claims. While it is not clear

whether these circumstances, if more fully developed, would support a retaliation claim, the following legal standards are provided should plaintiff choose to file an amended complaint that attempts to include such claims.

Filing administrative grievances and initiating litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or penological objectives, including the right to file inmate appeals and the right to pursue civil rights litigation). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68 (fn. and citations omitted). Direct and tangible harm will support a First Amendment retaliation claim even without demonstration of a chilling effect on the further exercise of a prisoner's First Amendment rights. Id. at 568 n.11.

IV. Option to Proceed on Original Complaint or File First Amended Complaint

Plaintiff may choose to proceed on his original complaint on his Eighth Amendment claims for the use of excessive force, and conspiracy to use excessive force, against defendants MCSP COs T. Griffin, J. Gold, M. Rhoades, M. Gruenwald, D. Vasquez, and A. Matson.

Alternatively, plaintiff may file a proposed First Amended Complaint that restates these Eighth Amendment claims against these defendants and also attempts to state cognizable retaliation claims against one or more of these defendants and/or defendant R. Cross.

An amended complaint supersedes the original complaint, Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967), and thus Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. An amended complaint must identify each claim and allege in specific terms how each defendant violated plaintiff's constitutional rights, demonstrating an affirmative link or connection between each defendant's challenged conduct

13

and the claimed deprivation of plaintiff's constitutional rights. <u>Rizzo v. Goode</u>, 423 U.S. 362, 371 (1976); <u>see also</u> <u>May v. Enomoto</u>, 633 F.2d 164, 167 (9th Cir. 1980). Vague and conclusory allegations of official participation in civil rights violations are not sufficient. <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

V. <u>Summary for Pro Se Litigant</u>

You have been granted in forma pauperis status; the filing fee will be paid over time with periodic deductions from your prison trust account.

The court has screened your complaint and finds that it states cognizable claims for the use of excessive force and conspiracy to use excessive force against defendants MCSP COs Griffin, Gold, Rhoades, Gruenwald, Vasquez, and Matson.

The complaint does not state cognizable due process or RICO claims, or a claim for intentional interference with prospective economic advantage; nor does the complaint state any cognizable claim against defendants Lizarrago or Kernan. The undersigned will recommend to the district judge that these claims and these defendants be dismissed from this action.

The complaint also fails to state a cognizable claim against defendant Cross. However, it appears that you may be attempting to allege that defendant Cross and/or one or more of the other remaining defendants acted in retaliation against you for the exercise of your First Amendment right to engage in civil litigation. Without addressing the potential merits of such a claim, the court has provided you with the legal standards for assessing whether the circumstances of this case would support a cognizable retaliation claim. If you choose to attempt to add a retaliation claim, you must do so in an amended complaint that includes the claims found cognizable in your original complaint.

You are not obligated to file an amended complaint. Please use the attached form to indicate your choice.

**Because the magistrate judge is recommending the permanent dismissal of some claims and defendants, you should not file an amended complaint or return the election form and service documents until *after* the district judge rules on the recommendation.**

////

14

## VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's request to proceed in forma pauperis, ECF No. 2, is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Within thirty (30) days after the district judge rules on the recommendation below, plaintiff shall complete and return the attached "Notice of Election," indicating whether he chooses to proceed on his original complaint on the claims against the defendants as construed herein, OR file a proposed First Amended Complaint (FAC).

4. If plaintiff elects to proceed on his original complaint, he shall submit the following documents to enable the United States Marshal to serve process on defendants Griffin, J. Gold, M. Rhoades, M. Gruenwald, D. Vasquez, and A. Matson: one completed summons, six completed USM-285 forms, and seven copies of the endorsed original complaint, ECF No. 1. The court will transmit these materials to the United States Marshal for service of process pursuant to Rule 4, Federal Rules of Civil Procedure. Defendants will be required to respond to plaintiff's allegations within the deadlines set forth in Rule 12(a)(1), Federal Rules of Civil Procedure.

5. Plaintiff's election to proceed on his original complaint will be construed as plaintiff's agreement to the voluntary dismissal, without prejudice, of CSP-SAC Lt. R. Cross from this action.

6. However, if plaintiff chooses to submit a FAC, it must comply with the requirements set forth herein, bear the docket number assigned this case, and be labeled "First Amended Complaint." An FAC will be screened pursuant to the standards set forth in 28 U.S.C. § 1915A.

7. The Clerk of Court is directed to send plaintiff, together with a copy of this order, the following: (1) one blank summons; (2) six USM-285 forms; (3) one copy of the endorsed original

complaint, ECF No. 1; and (4) instructions for service of process on defendants T. Griffin, J. Gold, M. Rhoades, M. Gruenwald, D. Vasquez, and A. Matson.

    8. Should plaintiff fail to timely file the Notice of Election, together with the documents necessary to serve process of the original complaint, OR a proposed First Amended Complaint, the undersigned will recommend the dismissal of this action without prejudice.

    Further, IT IS HEREBY RECOMMENDED that:

    1. Plaintiff's due process claims against defendants CSP-SAC Lt. R. Cross, MCSP Warden J. Lizarrago, and CDCR Secretary S. Kernan, be dismissed without leave to amend;

    2. Plaintiff's RICO claims and state law claim for intentional interference with prospective economic advantage be dismissed without leave to amend; and

    3. Defendants Lizarrago and Kernan be dismissed from this action.

    These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 23, 2018

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| JOHN HARDNEY,<br><br>               Plaintiff,<br><br>   v.<br><br>T. GRIFFITH, et al.,<br><br>               Defendants. | No. 2:17-cv-2462 MCE AC P<br><br>**NOTICE OF ELECTION** |

In compliance with the court's order filed _____, plaintiff elects to:

_____  **Option 1**: Proceed on the original complaint against defendants T. Griffin, J. Gold, M. Rhoades, M. Gruenwald, D. Vasquez, and A. Matson; the following service documents are submitted herewith:

       _____    One (1) completed summons form
       _____    Six (5) completed USM-285 forms
       _____    Seven (7) copies of the endorsed original complaint

**OR**

_____  **Option 2:** Proceed on a First Amended Complaint (FAC), submitted herewith.

_____       _____
Date                                                          Plaintiff